## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTANY MOBELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1288 |
| | ) | |
| MERAKEY ALLEGHENY VALLEY | ) | |
| SCHOOL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.     INTRODUCTION

Plaintiff Brittany Mobely initiated this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, asserting that her former employer, Defendant Merakey Allegheny Valley School, discriminated against her because of her race and terminated her employment in retaliation for complaining about the disparate treatment that she allegedly faced. (*See* Docket No. 1).   Defendant filed an Answer and Affirmative Defenses to Plaintiff's Complaint, along with a Counterclaim for breach of contract.   (*See* Docket No. 11).   Presently before the Court is Plaintiff's Motion to Dismiss the Counterclaim for lack of subject matter jurisdiction, which is opposed by Defendant.   (Docket Nos. 14, 16, 21, 22).   After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Plaintiff's Motion will be granted, and Defendant's Counterclaim will be dismissed without prejudice to its right to file the claim in state court.

### II.     BACKGROUND

As alleged in the Complaint, Defendant is a non-profit organization that provides services

to individuals with intellectual and developmental disabilities.   (Docket No. 1, ¶ 2).   To that end, Defendant operates a group home at its Windy Ghoul Single Family Residence ("WGSFR") located in Beaver, Pennsylvania.   (*Id.*, ¶ 13).   In 2016, Defendant hired Plaintiff, who is African American, for the position of House Manager Aide at WGSFR, and subsequently promoted her to a Live-In House Manager position in March 2017.   (*Id.*, ¶¶ 12, 16, 17).

While employed by Defendant, Plaintiff alleges that she was subjected to racially insensitive comments and other discrimination by her Caucasian supervisor.   (Docket No. 1, ¶¶ 20-24).   In March 2019, Plaintiff submitted a formal complaint detailing her supervisor's racially charged comments and other alleged discriminatory actions.   (*Id.*, ¶¶ 25-26).   Plaintiff claims that her supervisor was notified of the formal complaint.   (*Id.*, ¶ 27).

In April 2019, Plaintiff was placed on administrative leave and subsequently terminated for abuse, mistreatment or neglect of a wheelchair bound resident of WGSFR.   (Docket No. 1, ¶¶ 37-38).   Plaintiff asserts that the stated reason for her termination was pretext, and the true reason was her supervisor's racial animosity and desire to retaliate against her for lodging the formal complaint.   (*Id.*, ¶ 40).   Consequently, Plaintiff alleges racial discrimination and retaliation claims in violation of Title VII against Defendant, as well as a claim under the Pennsylvania Human Relations Act.

Defendant answered Plaintiff's Complaint, raised various affirmative defenses and asserted a Counterclaim for breach of contract.   (Docket No. 11).   The Counterclaim alleges that Plaintiff and Defendant entered into a self-styled License Agreement dated July 1, 2018, pursuant to which Plaintiff was permitted to occupy Defendant's property located at 109 Windy Ghoul Drive in Beaver, Pennsylvania in exchange for a monthly license fee of $199.00.   (*Id.* at 9, ¶¶ 1-2).   According to the Agreement, which is attached to the Counterclaim, Plaintiff was

2

required to keep the property in a good state of repair and was responsible for damage to the property by her or her family.   (Docket Nos. 11 at 9, ¶¶ 3-4; 11-1).

After Plaintiff vacated the property, Defendant allegedly discovered that she and/or her family damaged the property, as shown by work orders attached to the Counterclaim.   (Docket Nos. 11 at 9, ¶¶ 5-6; 11-2).   Defendant asserts that the damage necessitated repairs totaling approximately $16,526.00, as detailed on receipts and invoices also attached to the Counterclaim.   (Docket Nos. 11 at 10, ¶ 7; 11-3).   Accordingly, Defendant claims that Plaintiff breached the Agreement by not keeping the property in a good state of repair, and she is liable to Defendant for the costs of the repairs under the Agreement.   (Docket No. 11 at 10, ¶¶ 8-10).

Plaintiff has moved to dismiss Defendant's breach of contract Counterclaim, arguing that the Court does not have jurisdiction over the Counterclaim pursuant to Fed. R. Civ. P. 13 because it "bears no relationship to [her] claims of discrimination and retaliation."   (Docket No. 16 at 2).   Plaintiff further maintains that the Court may not exercise supplemental jurisdiction over the Counterclaim pursuant to 28 U.S.C. § 1367 because it is not so related to Plaintiff's claims that it forms part of the same case or controversy.   (*Id.*).

In opposing Plaintiff's motion, Defendant advocates that the Counterclaim is compulsory because it arises from the same basic controversy between the parties and involves the same legal and factual issues as the claims and defenses relevant to the Complaint.   (Docket No. 22 at 4-5).   Alternatively, Defendant submits that the factual and legal relation between the claims should, at a minimum, make the Counterclaim permissive, thus the Court should retain jurisdiction over it.   (*Id.* at 5-6).   The parties' briefing is now complete and the matter is ripe for disposition.

3

### III.   <u>LEGAL STANDARD</u>

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

Jurisdictional challenges may be treated either as "facial" or as "factual."  *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).   "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present."  *Id.* at 358.   On the other hand, a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.' "  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pa.*, 757 F.3d at 358).

Here, Plaintiff makes a facial challenge by contending that Defendant's Counterclaim does not involve a matter of federal jurisdiction.  When analyzing a facial attack on subject matter jurisdiction, "the court must only consider the allegations of the [counterclaim] and documents referenced therein and attached thereto, in the light most favorable to the [defendant]."  *In re Schering Plough*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).   "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party."  *Constitution Party of Pa.*, 757 F.3d at 358 (citing

4

*In re Schering Plough*, 678 F.3d at 243). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). As discussed below, Defendant has not met that burden here relative to its Counterclaim.

## IV.   <u>DISCUSSION</u>

In arguing that Defendant's Counterclaim should be dismissed for lack of subject matter jurisdiction, Plaintiff contends that the Counterclaim is not compulsory, but rather permissive, and the exercise of supplemental jurisdiction over the Counterclaim is not appropriate because it is not "part of the same case or controversy" as Plaintiff's discrimination and retaliation claims. (*See* Docket No. 16). The Court agrees.

Generally, a federal court may adjudicate a counterclaim if it is deemed compulsory. *See Great Lakes Rubber Corp. v. Herbert Cooper Co., Inc.*, 286 F.2d 631, 634 (3d Cir. 1961). A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). A compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim. *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 988 (3d Cir. 1984) ("[C]ompulsory counterclaims which are otherwise purely state-law claims are nonetheless ancillary to an underlying federal claim, and may be brought in federal court without an independent jurisdictional basis."). For a counterclaim to qualify as compulsory, it must "bear[] a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). The Third Circuit Court of Appeals has described the "logical relationship" test as follows:

5

> [A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.

*Id.* (quoting *Great Lakes Rubber*, 286 F.2d at 634). Thus, the court must analyze whether the claims involve: "(1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." *Id.*

A counterclaim that does not arise out of the same transaction or occurrence as the opposing party's claim is a permissive counterclaim. Fed. R. Civ. P. 13(b). "[A] permissive counterclaim may only be maintained if supported by an independent jurisdictional ground." *Ambromovage*, 726 F.2d at 988. Such an independent ground may be provided by 28 U.S.C. § 1367, which specifies that a district court has supplemental jurisdiction over all claims that are so related to the claims with original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). "Claims are part of the same case or controversy if they share significant factual elements." *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1198 (3d Cir. 1996).

"Generally, the mere fact that state law counterclaims arise from the same employment relationship as the original claims over which the court has subject matter jurisdiction is insufficient to render the counterclaims compulsory. . . . Some greater connection is necessary." *Brooks v. Valley Day Sch.*, Civ. No. 14-5506, 2015 WL 4770759, at *4 (E.D. Pa. Aug. 12, 2015) (quoting *Stewart v. Lamar Adver. of Penn LLC*, Civ. Nos. 03–2914, 03–2690, 03–5293, 2004 WL 90078, at *2 (E.D. Pa. Jan.14, 2004) (citing cases)). As observed in *Brooks*, courts have declined

to dismiss state law counterclaims in an employment discrimination action where the counterclaims go to an element of the plaintiff's discrimination claim. *See id.* (citations omitted). That situation is not present here.

In this case, Plaintiff alleges claims against Defendant under Title VII for race discrimination and retaliation. Accordingly, the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973) will be applied to determine whether Plaintiff has proved her claims: (1) first, Plaintiff must establish a prima facie case of discrimination or retaliation; (2) then, the burden shifts to Defendant to advance a legitimate, non-discriminatory or non-retaliatory reason for the adverse employment action; (3) and finally, Plaintiff is afforded an opportunity to show that Defendant's proffered reason was a pretext for discrimination or retaliation. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

Defendant's Counterclaim that Plaintiff breached the License Agreement by failing to keep the property that she occupied in good repair is not logically related to Plaintiff's discrimination and retaliation claims. Defendant concedes that it did not discover the facts underlying its Counterclaim until after it terminated Plaintiff. (Docket Nos. 11 at 9, ¶ 5; 22 at 4). Therefore, Defendant would be unable to argue that Plaintiff's alleged breach of the Agreement was a determinative factor for terminating her employment (*i.e.*, a potentially legitimate, non-discriminatory/non-retaliatory reason for the adverse employment action in the *McDonnell Douglas* analysis). Despite Defendant's contention that the breach of contract Counterclaim "arises from the same basic controversy as the employment-related claims asserted in the Complaint," (Docket No. 22 at 4), proof of the Counterclaim will require inquiry into facts that are unrelated to whether Defendant terminated Plaintiff's employment because of her race and/or in retaliation for lodging a complaint, or because of her job performance. *See Brooks*,

2015 WL 4770759, at *5 (dismissing counterclaim for breach of employment contract for failing to file necessary paperwork with IRS because it would have required inquiry into facts unrelated to the plaintiff's ADA claim); *Stewart*, 2004 WL 90078, at *3 (finding that defendants' allegations in counterclaim regarding plaintiff's alleged fraudulent acts did not relate to same facts that were essential to plaintiff's age and race discrimination claims).

The lack of a logical relationship between Defendant's breach of contract Counterclaim and Plaintiff's discrimination and retaliation claims is further highlighted by Defendant's Answer and Affirmative Defenses.   Notably, Defendant does not contend that it terminated Plaintiff's employment for breaching the License Agreement which serves as the basis for its Counterclaim, but rather asserts that it terminated Plaintiff's employment "due to [her] violation of . . . policies, Standards and Procedures, Standards of Professional Behavior No. 10 Quality of Care."   (Docket No. 11 at 5, ¶ 38).   By contrast, Defendant's Counterclaim narrowly avers that Plaintiff did not keep the subject property in "an orderly appearance and in a good state of repair" for which Defendant contends Plaintiff breached their License Agreement.   (*Id.* at 10, ¶¶ 8, 10).   As such, Defendant's Counterclaim does not logically relate to any elements of Plaintiff's discrimination and retaliation claims such as the *prima facie* elements of her Title VII and PHRA claims, Defendant's articulated, non-discriminatory and non-retaliatory reasons for terminating Plaintiff's employment, or whether such stated reasons were a pretext for an underlying discriminatory or retaliatory motive.   *See Brooks*, 2015 WL 4770759, at *4; *Stewart*, 2004 WL 90078, at *3 ("[T]he facts, evidence, and proof required to corroborate Defendants' affirmative defense substantially differ from those needed to prove their counterclaim.").

Additionally, Defendant's reliance on the after-acquired evidence doctrine to buttress its contention that the Counterclaim is compulsory is not persuasive.   (*See* Docket Nos. 11 at 8; 22

at 5).    Under that doctrine, evidence acquired by an employer after terminating an employee's employment can serve to reduce the terminated employee's recoverable damages if the employer establishes that the employee's "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge."    *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995). To invoke the after-acquired evidence doctrine, Defendant "must demonstrate that [it was] unaware of the alleged misconduct at the time of termination . . . and that the misconduct was of such severity to justify discharge and that [Defendant] in fact would have discharged [Plaintiff]." *Stewart*, 2004 WL 90078, at *4 (citing *McKennon*, 513 U.S. at 362-63).    Defendant's Counterclaim alleges that "[a]fter Plaintiff vacated the property, it was observed that Plaintiff and/or her family damaged [it]," (Docket No. 11 at 9, ¶ 5), but it does not assert that her alleged failure to keep the subject property in an orderly appearance and in a good state of repair constitutes wrongdoing of such severity that Defendant would have terminated her employment on those grounds alone.    Defendant only makes that argument for the first time in its Brief. (Docket No. 22 at 5) ("[T]he damage to the employer-provided residence would have resulted in the termination of Plaintiff's employment.    Plaintiff would have been terminated solely for this damage, even if the incident which actually caused [her] termination . . . had not occurred."). Nonetheless, Defendant cites no authority to establish that its reliance on the after-acquired evidence doctrine supports a finding that the breach of contract Counterclaim is compulsory. *See Stewart*, 2004 WL 90078, at *4 (rejecting argument that reliance on after-acquired evidence doctrine supports finding that counterclaim is compulsory).

In sum, Defendant's Counterclaim does not involve the same issues of fact or law as Plaintiff's claims, nor is it an offshoot of the same basic controversy between the parties.    At

9

bottom, both the claims and the Counterclaim stem from Plaintiff's employment relationship with Defendant, but no greater connection is present.   Although Plaintiff's employment is the reason she resided at Defendant's property, her conduct and treatment as an employee are not tied to her conduct as an occupant of the property.   Plaintiff's claims involve the disparate treatment she allegedly faced while employed as a Live-In House Manager for Defendant, her formal complaint concerning that alleged disparate treatment, Defendant's decision to terminate her, and the motivation for that decision.   None of this is relevant to Defendant's Counterclaim for breach of contract, which involves the damage allegedly done to its property and the cost to repair it.   Finally, the claims and Counterclaim do not involve the same legal issues, as the elements of breach of contract do not overlap with the elements of race discrimination or retaliation.   For these reasons, the Court concludes that Defendant's Counterclaim for breach of contract is not compulsory, but rather permissive.   Given that there is no independent basis of jurisdiction over the state law breach of contract Counterclaim,[1]  it must be dismissed.

---

[1]      The Court declines to exercise supplemental jurisdiction over Defendant's breach of contract Counterclaim because it does not share significant factual elements to form part of the same case or controversy as Plaintiff's discrimination and retaliation claims.   *See HB Gen. Corp.*, 95 F.3d at 1198; *Pecore v. Jennie-O Turkey Store, Inc.*, 990 F. Supp. 2d 984 (D. Minn. 2014) (declining to exercise supplemental jurisdiction over employer's state law counterclaims for breach of contract, conversion, destruction of real property, and willful and malicious destruction of leased residential property arising from employee's tenancy in employer's farmhouse after it had terminated her employment as a farm manager because counterclaims did not raise the same issues of fact or law as employee's Title VII claims alleging employer had discriminated against her based on her sex and terminated her in retaliation for reporting health code violations).   As discussed, the parties' employment relationship alone is insufficient to support the Court's jurisdiction, particularly given that Defendant's Counterclaim does not stem from Plaintiff's conduct as an employee, but rather her conduct as an occupant of the property.

V.      **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Dismiss Counterclaim (Docket No. 14) will be granted, and Defendant's Counterclaim will be dismissed without prejudice to its right to file the claim in state court.

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:        May 26, 2021

cc/ecf:      All counsel of record

11